contract was executory, and part of the consideration of the purchase was the plaintiffs' stipulation that they would not, within such term, give opportunity to any other person in the city of Buffalo, by sale to him, to come in competition with the defendant in the use of the advertising novelty in question. The plaintiffs disabled themselves from performance on their part of the contract in a respect which may have been deemed material to the beneficial purpose of the purchase. And when the plaintiffs did, by such sale to another, deny to the defendant the benefit of that provision, he was at liberty to treat such sale as a substantial breach of the contract, prejudicial to him, and on that ground to rescind it, if he was then able to restore to plaintiffs fully what he had received from them, and thus place them in the same situation in respect to the subject of the sale in which they were at and immediately before the time of the delivery of the goods. This the evidence on the part of the defendant tended to prove, and the conclusion is permitted that the defendant had in the meantime made no use of any of them. It was nevertheless necessary for the defendant to proceed promptly to rescind the agreement, to render it effectual. The conclusion was warranted that, under the circumstances, he did so with the reasonable promptitude and diligence essential to accomplish it. The cases cited by plaintiffs' counsel on the subject of remedy when the stipulations of a contract do not constitute conditions precedent were those in which there was no restoration to place the parties in statu quo. In such case the remedy for breach is an action for damages. There seems to have been no ruling at the trial to the prejudice of the plaintiffs. The judgment should be affirmed.

Argued before HARDIN, P. J., and FOLLETT, ADAMS, WARD, and GREEN, JJ.

F. M. Inglehart, for appellants.
Strebel & Corey, for respondent.

PER CURIAM. Judgment affirmed, with costs, on the opinion of BRADLEY, J., delivered at special term.

(7 App. Div. 431)

DURFEE et al. v. POMEROY et al.

(Supreme Court, Appellate Division, Fourth Department. June 17, 1896.)

1. WILLS—SUSPENDING POWER OF ALIENATION.
    A bequest of a trustee to pay the income to R. until 45 years old, and then turn over the property to him, but if he should die before reaching the age of 45 years, leaving a widow, to pay one-half of the income to her so long as she should remain his widow, suspends the power of alienation longer than two lives in being (1 Rev. St. p. 773, § 1), where R. was not married at the time of testator's death, since he might marry some one who was not born at the time of testator's death.

2. SAME—TRUST OR ABSOLUTE LEGACY.
    Testator, after making certain provisions for his daughter and his son, R., gave the residue of his estate to his executors in trust to pay one-half of the income to R. until 45 years old, and then to transfer one-half of such residue to him, or to his children, if any, should he die before attaining the age of 45 years. The will further provided that should R. die within the period, leaving a widow but no children, the widow should have one-half of the income which R. had enjoyed, so long as she remained his widow. *Held,* that testator's evident intent was to provide for his children during their lifetime, and to secure his property to his grandchildren, and therefore the provision in favor of R.'s widow could not be withdrawn from the trust so as to take it out of the operation of the statute of perpetuities.

Appeal from special term, Ontario county.

Action by Henry R. Durfee, Samuel B. McIntyre, and another, as executors of the will of Charles G. Pomeroy, deceased, against Frances Pomeroy and others, to obtain a judicial construction of a will of plaintiffs' testator. From a judgment that part of the will violates the statute against perpetuities, defendant Frances Pomeroy appeals. Affirmed.

The opinion of Mr. Justice ADAMS at special term is as follows:

The plaintiffs, who are the executors of the will in question, in their complaint allege that construction of that instrument, in several important particulars, is necessary to the due and proper administration of the estate committed to their charge; but, by consent of all parties, the only question which is at present submitted to the court for its adjudication is that which relates to the interest in such estate of the defendant Frances Pomeroy. In order to clearly appreciate the attitude towards the estate which this defendant occupies, it will be necessary to detail with considerable particularity the disposition which the testator has attempted to make of his property, and the conditions existing at the time of his death. He died leaving two children,—a son and a daughter. The son, Rhea, was a young man of intemperate habits, and the defendant, who is his widow, was a domestic in the testator's family. There is some reason to suppose that the son's attachment for her was known to the father, but, however this may be, it is a matter of minor consequence. By the first clause of the will, this son is given a life estate in the homestead, with remainder over to his sister, Eliza A. McIntyre, in the event of his dying without children; by the second clause, certain specific personal property is given absolutely to the son; and, by the third or residuary clause, all the rest, residue, and remainder of the testator's estate, both real and personal, is devised and bequeathed to his executors in trust for the purposes thereinafter named. The trust thus created contemplates, among other things, the payment of one-half of the income arising from the trust estate to Rhea, until he shall attain the age of forty-five years; and when that period arrives the corpus of his share of such estate is to be transferred to him absolutely, if, in the judgment of the executors, he is then "a sober man, and fit to be intrusted with said property," but in case of his death before reaching the age of forty-five years, leaving a child or children him surviving, the executors are directed to transfer his share of the estate to such child or children. But in the event of his death within the period last aforesaid, leaving a widow but no child or children, then the will further provides that: "I devise and bequeath to her one-half of the income of said half of the rest, residue, and remainder of my said property, so long as she shall remain his widow." And in case she should marry again her share of such income is given to the daughter, Eliza A. McIntyre, who also receives a life interest in the remaining moiety of the residuary estate. The will in question bears date the 4th day of August, 1884. The testator died December 14, 1887, leaving considerable real estate, and also personal property to the amount of at least $14,000. Shortly after his death, Rhea was married to the defendant, and soon thereafter, and prior to his arrival at the age of 45, he departed this life, leaving the defendant, but no child or children, him surviving. The widow, who has never remarried, now insists that by the terms of the will she is entitled to the income, during her life or widowhood, of one-quarter of the residuum of the estate, whatever that may prove to be; and it is the claim thus urged that raises the issue which, in its determination, seems to demand a legal construction of the will in question.

The first proposition suggested by a reading of this instrument is that it contains an attempted suspension of the power of alienation of a portion of the testator's property beyond the period permitted by the statute; in other words, that, inasmuch as Rhea did not marry until after the death of his father, there was a life possibly not in being at the time provision was made for his widow's enjoyment of an interest in the testator's estate, and that, consequently, such provision is repugnant to the statute of perpetuities (1 Rev. St. p. 773, § 1), and therefore void. Such, indeed, does seem to be the

law of this state. It is perhaps carrying the doctrine to an extreme limit, and it is a rule which will undoubtedly prove a harsh one in many cases, and perhaps in none more so than in the case under consideration, where it was unquestionably the intention and desire of the testator to make some provision for his son's wife, in the contingency of his marrying and leaving a wife surviving him. But the court cannot concern itself with the operation of any rule. It must apply the law as it finds it, and it is certain that the principle contended for has been adjudicated in a case, the circumstances of which were not unlike those which are here being considered; and that adjudication has, in several instances, being quoted with approval by the court of last resort. Schettler v. Smith, 41 N. Y. 328; Burrill v. Boardman, 43 N. Y. 259; Knox v. Jones, 47 N. Y. 397; Smith v. Edwards, 88 N. Y. 104; Tiers v. Tiers, 98 N. Y. 573; Haynes v. Sherman, 117 N. Y. 437, 22 N. E. 938; Underwood v. Curtis, 127 N. Y. 540, 28 N. E. 585.

Recognizing the fact that this court must, of necessity, be concluded in its determination of this question by the authority first cited, the defendant's counsel insists that the will is capable of a construction which renders the law of that case inapplicable, and suggests that the provision for the defendant be regarded as withdrawn from the trust, and treated as an absolute legacy of the one-fourth part of the income of the testator's estate. This contention is presented most elaborately, and with no little adroitness, certain words and phrases being ingeniously selected, which, isolated from their context, would seem to warrant such a construction; and then counsel seeks to fortify his position with the further suggestion that the construction for which he contends would enable the court to regard the obvious intention of the testator. But while anxious to sustain, rather than to invalidate, every testamentary disposition of property, where the intention of the testator is made clearly manifest, the court cannot, even for the accomplishment of so desirable a result, do violence to certain well-established canons of construction, one of which is that, when the general plan or scheme of a testator is ascertained, effect must be given to it, even at the sacrifice of a particular intention which is inconsistent with it. See opinion of Sutherland, J., in Lovett v. Kingsland, 44 Barb. 561–567. The first endeavor, therefore, must be to determine, if possible, upon what general plan or basis the testator designed the disposition of his estate. Fortunately, the language of his will, taken as a whole, leaves very little room for doubt upon this subject; for it requires but a casual examination to reach the conclusion that the prime object which he had in mind, so far as the residuum of his estate is concerned, was the making of a suitable provision for his own children during their lifetime, with the ultimate intention of securing to his grandchildren the corpus of the estate, and to this end a trust was created, and the trust estate was to consist of the entire residuum, whatever it might be. It is true that in making provision for the possible contingency that his son would marry, and then die leaving a widow and no children, he uses this language: "Then she [meaning the widow] is to have, and I devise and bequeath to her, one-half of the income of said half of the rest, residue, and remainder," etc. But how can the meaning which is sought to be given to these words be made to harmonize with the primal idea that his trustees were to take control of all his residuary estate, and which is expressed in the phrase, "All the rest, residue, and remainder of my real and personal property and estate, and every name, kind, and nature, wheresoever situate, I will, devise, and bequeath to my executors hereinafter named, and their successors, in trust, upon and into the uses, purposes, and trusts hereinafter named"? There are no succeeding words, which, in express terms, withdrew any portion of the residuum from the trust estate, and to imply any such intention on the part of the testator would result in much confusion and lack of harmony, for in other parts of the will direction is made that from the net income of the estate one hundred dollars shall be expended annually in repairs to the homestead; that a monument costing not to exceed six hundred dollars shall be erected, and paid for out of the income of the whole estate; and that the support and maintenance of one Euretta Mills, as well as her funeral expenses, shall be provided for from the same source. If, then, the provision for the defendant is to be regarded as a bequest of income, it is certainly subject to proper deductions for the purposes just specified, and these deductions must

necessarily be made by some one other than the defendant. The mere statement of this proposition is sufficient, I think, to show quite conclusively that whatever interest the defendant might have in the estate was inseparable from the trust, and, if so, then it is impossible to give to the will the construction contended for.

The learned counsel for the defendant cites several authorities which he insists fully support him in the position he occupies, but it seems to me it is not a difficult matter to distinguish them from the case in hand. In Mason v. Jones, 2 Barb. 229, upon which much stress is apparently laid, the testator had devised to his executors, in trust, one-half of the estate, from the income of which they were directed to pay certain specific annuities to the annuitants therein mentioned; and, in order to uphold the will, this court held that several trust funds were created, and that the annuities were a charge upon the estate. But, as has been stated, the rents and profits were not to be distributed among certain beneficiaries, but from that source annuities which were certain in their amount were to be paid to them. The facts in the case of Griffen v. Ford, 1 Bosw. 123, were quite different from those in the present case. There the testator directed his trustee to apply so much of the rents and profits of his estate as might be necessary towards the support and maintenance of his wife as long as she remained his widow, and it was held that this was in the nature of an annuity; that it did not effect a suspension of the power of alienation, because it was within the power of the trustees or of the court to fix upon a specific sum to be set apart for the widow's support, or it was within her power to accept a gross sum and release the estate. But such is not the case with the defendant, for, as has already been shown, her interest in the estate could only be satisfied by transferring to her one-quarter of the net annual income of the estate during her widowhood, which may be equivalent to saying during her lifetime. The case of Matteson v. Matteson, 51 How. Prac. 276, is one in which it appears that the testator created no trust, but gave directly to his wife one-half of all the income of his real and personal estate, which, of course, amounts to nothing more than a charge upon the estate, and does not suspend the power of alienation. This would be ample authority for the defendant, if, as claimed, her interest in the testator's estate were not affected by, and embraced in, the trust. To epitomize the whole matter, I am persuaded that the will under consideration must be construed to contain a trust which embraces the defendant's interest in the estate; that such trust is one expressly recognized by the statute (1 Rev. St. p. 728, § 55, subd. 3); that the necessary effect thereof upon so much of the estate as would otherwise belong to the defendant is to create an illegal suspension of the power of alienation, as to such portion; that upon the death of Rhea Pomeroy one-quarter of the residuary estate of Dr. Pomeroy became the absolute property of his daughter, Eliza A. Pomeroy; and that she was likewise entitled to the income from the remaining quarter during her lifetime. Further construction does not seem to be required by the exigencies of the case, and therefore judgment is ordered in accordance with the views herein expressed, with costs to both parties to be paid out of the estate.

Argued before HARDIN, P. J., and FOLLETT, WARD, and GREEN, JJ.

Edwin K. Burnham (Stephen K. Williams, of counsel), for appellant.

Henry R. Durfee and Samuel B. McIntyre, in pro. per.

PER CURIAM. Judgment affirmed, on the opinion of ADAMS, J., delivered at special term, with costs and disbursements to respondents and appellant, payable out of the estate.